United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 00-00274 CRB |
| Plaintiff, | **MEMORANDUM AND ORDER** |
| v. | |
| YACOV YIDA, | |
| Defendant. / | |

On April 13, 2006, the jury trial of defendant Yacov Yida concluded when the Court declared a mistrial after the jury reached an impasse. The Government immediately advised the parties that Yida would be re-tried. At a status conference on April 26, 2006, the Court set the re-trial for July 24, 2006, which was then advanced to July 17, 2006, to accommodate scheduling concerns. A pretrial conference occurred on July 6, 2006, at which time the Court held oral argument on the Government's Motion to Admit at Trial Former Testimony of Unavailable Witness pursuant to Federal Rule of Evidence 804(b)(1). The Court ordered supplemental briefing and held an additional oral argument on July 13, 2006. After carefully considering the parties' thorough arguments, the Court hereby DENIES the Government's motion.

## BACKGROUND

According to the Government's Motion, David Reziniano is a native and citizen of Israel. On April 22, 2004, he pled guilty to conspiring to import and distribute MDMA in the

Central District of California. He received a sentence of 63 months, which he completed on November 29, 2005. Reziniano was released into the custody of the Department of Homeland Security for deportation proceedings, which he did not contest because he wished to return to Israel. On December 7, 2005, an immigration judge ordered his deportation. The following day, the Government obtained a material witness warrant for Reziniano because he was to testify against Yida at his upcoming trial. Pursuant to the warrant, Reziniano was required to remain in federal custody. At that time, according to the Government, Reziniano "made clear that, now that he had finished serving his prison sentence, he felt that he should be allowed to return to Israel and resume his life there." Mot. at 2.

Reziniano remained in federal custody for nearly five months leading up to defendant's trial, which commenced on April 3, 2006. During that time, Reziniano spent some time in solitary confinement in order to accommodate his medical and religious dietary requirements and to prevent him from intermingling with other inmates involved in the trial. On April 4, 2006, Reziniano testified during defendant's trial. After the mistrial, Reziniano's lawyer, Randy Sue Pollock, contacted the Government in an attempt to resume her client's deportation proceedings. After receiving assurances from both Reziniano and Pollock that he would return for the re-trial, and after promising to pay for all of his expenses associated with his return to San Francisco for the trial, the Government released Reziniano from custody and allowed him to be deported to Israel. Neither defense counsel nor the Court was advised of his deportation. Now, despite the efforts of Pollock, Reziniano's former counsel Michael Stepanian, Special Agent Catherine Miller, and Assistant United States Attorney Dana Wagner, Reziniano has refused to return to testify in defendant's re-trial. The Government now seeks to admit Reziniano's testimony from the original trial pursuant to hearsay exceptions under Federal Rule of Evidence 804.

## LEGAL STANDARD

Reziniano's former testimony, which qualifies as hearsay, is only admissible if a hearsay exception applies. Federal Rule of Evidence 804 enumerates hearsay exceptions where the declarant is unavailable. Rule 804(a) identifies five situations in which a declarant

2

may be "unavailabl[e] as a witness." Rule 804(a)(5), which is the only subsection applicable here,[1] defines unavailability to include a situation in which the declarant "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance ... by process or other reasonable means." If a declarant is unavailable under 804(a), Rule 804(b)(1) permits "[t]estimony given as a witness at another hearing of the same or a different proceeding, ... if the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

The question presented here also implicates defendant's Sixth Amendment rights under the Confrontation Clause. The Supreme Court has held that where, as here, testimonial evidence is at issue, "the Sixth Amendment requires what the common law required: unavailability and a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 68 (2004). Notably, Crawford negated the importance and relevance of any "indicia of reliability" of the hearsay testimony. See id. at 61; see also Ohio v. Roberts, 448 U.S. 56, 66 (1980). There is no dispute here as to whether the testimony the United States seeks to admit benefitted from cross-examination by defendant in a nearly identical proceeding.[2] The issue before the Court, therefore, is whether Reziniano qualifies as unavailable.

Under the Sixth Amendment, it is well-established that "a witness is not 'unavailable' for purposes of [this] exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." Barber v. Page, 390 U.S. 719, 724-725 (1968); see also Roberts, 448 U.S. at 74. While the "law does not require the doing of a futile act, ... [t]he lengths to which the prosecution must go to produce a

---

[1] The Government also contends that Reziniano is unavailable under Rule 804(a)(4), which allows for a court to make a finding of unavailability if the declarant "is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity." As the Court concluded in open court at the pre-trial conference, the United States provides no admissible evidence to support a finding that Reziniano is unavailable to testify as a result of medical necessity. Accordingly, the Court finds that Reziniano is not unavailable under Rule 804(a)(4).

[2] The previous trial testimony, however, was not videotaped so that the trier of fact in the re-trial would be able to observe the witness's demeanor.

3

1  witness ... is a question of reasonableness." Roberts, 448 U.S. at 74 (quoting California v.
2  Green, 399 U.S. 149, 189 n.22 (1970)); see also United States v. Olafson, 213 F.3d 435, 441
3  (9th Cir. 2000); United States v. Wilson, 36 F. Supp. 2d 1177, 1180 (N.D. Cal. 1999) ("The
4  central constitutional inquiry is whether or not the government's actions were reasonable
5  given all the circumstances of a particular case.").

### DISCUSSION

The United States argues that Olafson and United States v. Winn, 767 F.2d 527 (9th Cir. 1985), control here. Both of those cases involved illegal immigration prosecutions in which material witnesses were removed from the country and were not present to testify. In Winn, the Government only decided to prosecute the defendant after returning the two percipient witnesses, both Mexican citizens, to Mexico. Winn, 767 F.2d at 530. Because the Government "had no addresses or any other information that would help locate" the witnesses, the court determined that it was reasonable for the Government to make no effort to find them. Id. The court held that the Government established unavailability and admitted the statements of the unavailable witnesses. Id.

Olafson also involved two witnesses from Mexico who gave statements to the United States Border Patrol that they were Mexican citizens and had entered the United States illegally. 213 F.3d at 438. Before the defendant's trial, however, the Border Patrol inadvertently returned the witnesses to Mexico. Id. In Olafson, unlike Winn, the Government knew of the whereabouts of one of the witnesses, and a Border Patrol agent attempted to convince him to return to the United States to testify. The court, relying on Winn, held that the district court did not abuse its discretion in finding the witnesses to be unavailable. Id. at 442.

The dispositive issue here, however, is not whether the Government's efforts to convince a since-deported witness to return to testify were reasonable;[3] rather, the central

---

[3] Indeed, the Court finds that the Government's attempt to convince Reziniano to return–including contacting him in Israel and urging him to honor his previously given word; arranging for him to be paroled back into the country; and offering to pay for his expenses associated with his trip–was a reasonable, good faith effort to compel his presence at trial *"after*

4

1  concern is whether the Government's decision to permit Reziniano to be deported in the *first*
2  *place*, while in the custody of the Government, was a "reasonable means" to "procure the
3  declarant's testimony." Fed. R. Evid. 804(a)(5). Neither Winn nor Olafson considered or
4  discussed this issue.[4] See U.S. Suppl. Br. at 8 ("In [Winn and Olafson], the Ninth Circuit
5  found that deported witnesses were 'unavailable' because the government had acted in good
6  faith to obtain their presence, *without making any inquiry into whether their deportation had*
7  *been negligent*.") (emphasis added).

8      Other courts, however, have made an inquiry into whether the Government's role in a
9  witness's deportation affects the reasonableness inquiry into his unavailability. In United
10  States v. Wilson, 36 F. Supp. 2d 1177 (N.D. Cal. 1999), Judge D. Lowell Jensen surveyed
11  cases from the First, Fourth, Fifth, Eighth, and Tenth Circuits, and concluded that the
12  Government's duty to make reasonable and good faith efforts existed *before* the witness left
13  the United States. Wilson, 36 F. Supp. 2d at 1182. Judge Jensen wrote:

> At a minimum these cases establish that an alien witness who has left the country, either at the government's instigation or through a failure to detain on the government's part, should be found unavailable unless the government took reasonable and good faith efforts before the witness left the United States to ensure that the witness would be available for trial.

17  Id. The Court finds Judge Jensen's reasoning persuasive, for once a witness has been
18  deported, "[a]ny steps taken thereafter ... were inevitably too little too late." Id.

19      Moreover, the First Circuit has directly applied the reasonable means inquiry to the
20  Government's efforts to preserve the presence of a witness within its jurisdiction. In United

---

his release to Israel." U.S. Suppl. Br. at 3.

[4] The Government argues that Olafson implicitly endorsed a finding of reasonableness even where the Government negligently deports a material witness. Olafson was decided without oral argument, and the Court has reviewed the parties' briefs in the Ninth Circuit. There, the defendant did not dispute that the efforts of the government to procure the presence of the witness were unreasonable; rather, the defendant merely argued that "there was no showing made by the government ... regarding the procurement of his 'testimony.'" Appellant's Opening Brief at 15, United States v. Olafson, 213 F.3d 435 (9th Cir. 2000) (No. 99-50216). Olafson's challenge centered around the district court's decision not to permit further testimony via a Rule 15(a) deposition. Accordingly, the Olafson court did not have the occasion or the inclination to address whether the Government's inadvertent deportation was reasonable. The Court therefore finds that Olafson stands for the proposition that efforts made *following* a witness's deportation are reasonable if an affirmative, good faith attempt is made to convince the witness to return to the United States to testify, but does not address the decision to deport such a witness.

1  States v. Mann, 590 F.3d 361 (1st Cir. 1978), the court held that the "reasonable means"
2  inquiry is not limited to the narrow time frame before trial and after the witness has left the
3  country. 590 F.3d at 368. Indeed, "[i]mplicit ... in the duty to use reasonable means to
4  procure the presence of an absent witness is the duty to use reasonable means to *prevent* a
5  witness from becoming absent." Id. (emphasis added); accord United States v. Eufracio-
6  Torres, 890 F.2d 266, 270 (10th Cir. 1989) ("The law does not require the government to
7  utilize an absolute means of attempting to assure the appearance of a witness, only a
8  reasonable means."). The importance of the Government's vigilance in preserving a
9  witness's availability is underscored by the vital Sixth Amendment confrontation rights
10 implicated. Where the Government had reasonable means to ensure the presence of a key
11 witness, "[t]he defendant should not suffer the injury from the government's choice" not to
12 do so. Mann, 590 F.2d at 368 (finding that the government failed to demonstrate the
13 unavailability of the witness "[o]n this independent basis").
14     Accordingly, in the absence of Ninth Circuit precedent directly addressing the
15 Government's duty to ensure the presence of a witness in its control prior to trial, and with
16 the benefit of persuasive and sound guidance from other courts, the Court finds that the
17 "reasonable means" inquiry applies to the Government's affirmative decision to permit
18 Reziniano to be deported. Therefore, Reziniano is unavailable to testify only if the United
19 States' efforts to ensure his presence at trial prior to his deportation were reasonable.
20     Notably, defendant does not contend, and the Court does not find, that the
21 Government was motivated in any way by bad faith in permitting Reziniano to be deported to
22 Israel. Nor does the Court believe the Government engaged in deliberate misconduct by
23 removing the material witness warrant and allowing Reziniano to return to Israel. But a
24 determination that the Government acted in good faith, while necessary to a finding of
25 reasonable, does not end the reasonableness inquiry. A defendant's invaluable Confrontation
26 Clause right necessitates a careful inquiry into whether the Government's decision to permit
27 a material witness to be deported was reasonable, of which good faith is but one component.
28 The decision to place a material witness in custody to ensure his presence at trial is a difficult

6

one and no doubt contemplates a number of competing factors. This is of particular concern where, as here, the Government previously held Reziniano in prison solely as a material witness. For the reasons set forth below, the Court finds that the Government's decision to allow Reziniano to be deported was not reasonable.

As an explanation for its change of mind, the Government contends that Reziniano was no longer a risk of flight after the first trial because: (1) he (and his attorney) made oral assurances that he would return; (2) he had cooperated with the Government in the lead-up to the trial, (3) he had medical problems; (4) the Government was concerned about his Fifth Amendment due process rights; and (5) the Government agreed to pay his expenses to return to testify.

First, Reziniano himself is a convicted felon who was being deported as a result of his felony. He testified at the first trial to using a number of aliases to conduct criminal activity and evade detection. At the very least, Reziniano is not a trustworthy individual. The Government acknowledged as much when it held him in federal custody on a material witness warrant for nearly five months prior to the first trial. An oral promise from such an individual, without more, is therefore not a valid reason to determine that he no longer poses a risk of flight.

Second, the Government apparently fails to recognize the likelihood that Reziniano cooperated with the Government because he remained in its custody for that sole purpose. That much was made clear when he testified on the witness stand at the first trial that he did not want to be there. Further, the Government's briefing appears to recognize this fact. See Mot. at 2 (noting that Reziniano made clear that he wished to return to Israel after completing his sentence). Any cooperation from Reziniano, therefore, was at the very least coerced in some fashion by the fact that he remained in federal custody. His cooperation, which was a condition of his plea agreement, could have been compelled by contempt proceedings had he become recalcitrant. Accordingly, such involuntary cooperation was insufficient to indicate to the Government that he would return to testify once he was deported to Israel.

1    Third, the United States is correct to be concerned about Reziniano's due process
2 rights by keeping him in custody after his sentence was completed. See <u>Aguilar-Ayala v.
3 Ruiz</u>, 973 F.2d 411, 419 (5th Cir. 1992) (noting that "undocumented aliens have an
4 overriding liberty interest in not being detained as material witnesses, when the deposition
5 procedure serves as an adequate alternative to prolonged detention"); <u>Eufracio-Torres</u>, 890
6 F.2d at 270 ("The competing interests to be weighed against those of [the Sixth Amendment
7 rights] of the accused are the witnesses' procedural due process rights."). Yet all material
8 witness warrants that require an "innocent" person to remain in custody implicate due
9 process concerns. This is not a case, like in <u>Eufracio-Torres</u>, where the accused is free on
10 bail while the material witnesses, who were not charged with a crime, remain in custody.
11 <u>Eufracio-Torres</u>, 890 F.2d at 270. Here, defendant is charged with a very serious crime, has
12 been in custody for more than one year, and faces the possibility of a significant sentence if
13 convicted.

14    Moreover, the Government initially weighed the due process concerns against the risk
15 of flight and determined that his importance as a witness overcame any due process rights he
16 may have possessed. Yet the Government has failed to explain why this calculus changed
17 after the first trial when he already had been detained in federal custody for five months. In
18 addition, the Government acknowledged at the pretrial conference that it made the decision
19 to retry defendant immediately, and it therefore knew that a re-trial date would be imminent,
20 or at least within its control. Notably, this was not a situation where Reziniano's detention
21 would be of a "prolonged" nature, particularly when considered in light of the fact that he
22 had already spent a significant amount of time in custody.

23    Fifth, the Government had at its disposal a number of alternatives to ensure
24 Reziniano's presence at the re-trial while reducing or eliminating his confinement in federal
25 prison. See <u>Mann</u>, 590 F.3d at 366 ("Sufficient relief could have been offered the witness by
26 placing her in lesser custody, or perhaps by simply supplying maintenance, and retaining her
27 passport and ticket."); see also <u>Wilson</u>, 36 F. Supp. 2d at 1182 ("Good faith and reasonable
28 efforts require at least some affirmative action, such as issuing a subpoena, arranging

8

payment of travel expenses, or taking affirmative steps to ensure the alien remains in the United States until trial is complete."). The Government contends that its offer to pay Reziniano's expenses to return to San Francisco for the re-trial satisfies this requirement to take affirmative steps to secure the witness's presence at trial. See Eufracio-Torres, 890 F.2d at 270 (noting that witnesses who were given a trial subpoena, instructed how to return and how to obtain funds so that they could return, and who promised to return but didn't were unavailable).[5] The Court, however, is not convinced. Undoubtedly, providing travel expenses is a necessary condition to ensure that a foreign witness returns for trial; after all, one cannot imagine that any witness would pay his own way to testify at a trial. Yet such an offer alone is not a sufficient condition. A witness who poses a risk of flight, who has spent nearly five years in prison serving his sentence for a felony conviction, who has stated that he did not wish to testify in the first trial, and who has expressed his desire to return to his native county, is unlikely to be swayed to return to the United States by the Government's offer to pay his expenses. Such an offer demonstrates the good faith nature with which the Government handled this matter, but it does not demonstrate the Government's reasonableness. While an offer to pay the expenses of a witness may be one factor among several that illustrates the Government's reasonable efforts to ensure a witness's presence, it is not sufficient standing alone. And as noted above, this offer was effectively the Government's only legitimate effort to ensure that Reziniano would be present at defendant's re-trial.

In light of all of the above considerations, the Government could have approached defense counsel or the Court to seek guidance as to an appropriate way to handle a delicate situation. For example, the Court may have been able to arrange a video deposition of

---

[5]The court in Eufracio-Torres appears to emphasize that the value of the witnesses' personal testimony in Spanish was not appreciably greater than the value of their deposition testimony. Eufracio-Torres, 890 F.2d at 270. That is not the case here.

9

Reziniano while he was in custody in order to expedite his return to Israel.[6] Instead, the Government did not notify the Court or defense counsel when it permitted Reziniano to be deported based primarily on his oral assurance that he would return. Given the fact that Reziniano had already spent five months in federal custody on a material witness warrant, the obvious implication of this decision is that the Government was more willing to allow Reziniano to leave the country once it had his trial testimony. See Mann, 590 F.2d at 367 ("The government did not make as vigorous an attempt to secure the presence of the witness as it would have made if it did not have the prior recorded testimony."). Where, as here, the testimony plays a significant role in the Government's case, the standard of reasonableness is further heightened because the accused's Confrontation Clause rights are strengthened. See Mann, 590 F.2d 367 n.6 ("A lesser effort might be reasonable where the testimony goes to minor, collateral, or uncontested matters."). Under these particular circumstances, the Government's efforts to ensure Reziniano's presence at the re-trial were insufficient and unreasonable.

## CONCLUSION

For the foregoing reasons, the Court finds that Reziniano is not unavailable to testify. The Government's decision to permit Reziniano to return to Israel merely based on an oral promise to return was unreasonable. Accordingly, the Government's motion to admit his former testimony is hereby DENIED.

**IT IS SO ORDERED.**

Dated: July 13, 2006

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[6] Notably, the Government does not wish to conduct a Rule 15(a) videotaped deposition in Israel of Reziniano because it claims such testimony would be redundant given his former testimony at trial. While indeed the testimony may be redundant, it goes without saying that a jury's ability to measure a witness's credibility, which directly implicates the Confrontation Clause rights of the accused, is significantly enhanced if the jury can actually see the witness testifying, as opposed to merely listening to testimony read cold by a neutral individual.

G:\CRBALL\2000\0274cr\order re former trial testimony.wpd     10